## **STATEMENT OF FACTS**

Between August 7, 2013, and September 10, 2013, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, Detective Palchak ("UC") and members of the Task Force posted an advertisement on the website Craigslist.  The advertisement was posted in the "casual encounters" section of the classifieds and used language to attract individuals with a sexual interest in children.

On or about August 7, 2013, at approximately 2:16 p.m., an individual identified as the defendant Chad Pyles ("defendant") responded to the craigslist advertisement by e-mail and wrote, "What are you into?  I can't wait to be a dad."  The defendant's email address is dcperv22@gmail.com.  The UC responded, "into incest, daddy daughter, yng, etc...you?"  The defendant responded, "Same.  Are you fortunate to have a daughter?"  The UC explained that he had a 12 year-old daughter and access to his girlfriend's 7 year-old daughter.  The defendant responded, "You luck sob ;) I bet that 12 year-old is just starting to get nice and horny."  Very quickly the conversation turned to child pornography.  The defendant wrote, "I've got some [pics] on a flash drive at home tons actually some hc too may I see a few of [your daughter]?"  The defendant identified himself as a 23 year-old from Northern Virginia and explained that he was close to a metro and interested in meeting but that they would have to "Skype verify first."

During the course of the e-mail conversation, which took place between August 7 and August 15, 2013, the defendant distributed five (5) images of child pornography.  Those images included three (3) images of adult males penetrating prepubescent female children, one (1) image of an adult male penis inches from an infant child with semen covering the infant, and one (1) close-up image of adult male hands spreading the vagina of a prepubescent female child.

After a lengthy e-mail conversation about child pornography, on August 7, 2013, at approximately 5:48 p.m. the conversation again turned to meeting.  During the course of that conversation, the defendant e-mailed the UC his telephone number so that they could text message.  At approximately 6:02 p.m., the defendant asked, "So when can I come and play and how did you get them started?"  The UC responded, " . . . lets plan a time I have to run for now but you can text me if you want, I should be back around 9 or so," and the defendant replied, "are you near a metro I should be in Arlington tomorrow."

The e-mail conversation continued on August 8, 2013.  At 1:46 p.m. the defendant wrote, " . . . I should be in the city tomorrow.  So when you play with them what all do they do.  Are they into it?"  The UC responded, "Cool, I am out of town this weekend leaving tomorrow morning but will be back Monday and pretty much free all next week.  The 7 yo is starting to get into it a lot more, she is really getting better at sucking cock but still has a hard time swallowing cum and ends up gagging and spitting it out.  Her pussy is very smooth and tight and she squirms a lot when being eaten out.  How does you schedule look next week?"  The defendant responded, "Pretty free.  What about the 12 year old."  When the UC responded that the 12 year-old was

1

"totally into it now," the defendant replied, "She likes to get fucked?   Have you ever had any other guys over to play with them . . . How do you keep the 7 year old quiet so she doesn't tell mom."   The UC explained that he had built total trust with both of the children and then asked, "What are you interested in if we meet?   Just you and I or the 7 yo?   12 yo?"   The defendant responded, "Both of them or the 12 year old you and I can also jerk to some of your pics of them as well but I would love if they helped us.   Ever play with them at the same time."

       On August 8, 2013, at approximately 3:39 p.m. the defendant and the UC continue to talk about meeting for the purpose of having sex with one or both of the children.   The UC wrote, "Cant do them at the same time so if you want we can start with the 7 yo because she is easier to get next week."   The defendant and the UC then continued to discuss logistics of a meeting including time and location.   During the course of that discussion the UC again asked, " . . . just let me know what you want to do.   Do you want to jerk to pics of them together without them there," to which the defendant responded, "I'd like to play with one of them too but I'm very nervous about this situation."   The defendant again attempted to give the defendant an out and responded, "can understand as I am nervous too, we can just jack to pics first time without the girl. Bring what you got and ill have some of them."   The defendant immediately responded, "I'll think about it either way both are frowned upon I would rather just have one of them there to help us and to cum all over ;)."

       On August 12, 2013, at approximately 10:34 a.m. the defendant initiated the conversation writing, "You back?"   The UC responded at 2:36 p.m., "Yep, got back this morning. How was your weekend?"   The defendant responded, "It was okay. Do you have either of them?"   The UC responded that he texted his ex so that the 12 year-old would come over that week and asked the defendant, "How does tomorrow work?   She is the 12 yo."   The defendant responded, "I could prob make it. Is there a way you could get her now?"   The defendant wrote that he was not sure of his schedule.   At approximately 3:06 p.m. the defendant wrote, "let me think it over im still nervous."   The UC again suggested, "We could also just meet alone one day with none of the girls just to feel more comfortable."   The defendant responded, "yea that's not a bad idea or we meet in the morning and you get one of them later in the day."

       From August 15 to September 5, 2013, the UC and the defendant exchanged a few e-mails. The defendant would, on most of those occasions, initiate an e-mail discussion with the UC when he was "in the city."   On September 4, 2013, the UC wrote, "how are things?"   The UC responded on September 5, 2013, "Things are good, how you been?   Long time no chat."   On Tuesday, September 10, 2013, at approximately 3:15 a.m., the defendant wrote, "Been good. What's going on for tomorrow (Tuesday) . . . can I come over?"   The UC responded that he was watching the 7 year-old that night and, "If I have time, it depends on when I have to watch gf daughter."

       At 4:08 p.m., the defendant wrote, ". . . would you wanna meet tonight . . . free whenever." The UC asked, "Should we meet in public first, might make me feel better?   The defendant responded, "If you want . . . I'm comfy meeting at your place if you want to just trust me."   The UC wrote, "Fuck I want to but nervous about you coming directly to my place," and the defendant

responded, "Nervous as well but feel good about it . . . we should make it happen." The defendant offered to talk on the phone to ease the UC's concerns and provided his phone number. The defendant and the UC engaged in a recorded telephone conversation. During that call the defendant and the UC discussed logistics of the meeting. The UC stated that his girlfriend and her daughter were at the house and that he was waiting for his girlfriend to leave. The defendant asked if, "it was cool to come over?" The UC explained that he was nervous. The defendant stated that he was in Arlington near the Metro. The UC asked if the defendant would be ok "with just oral" the first time. The defendant stated that he was fine with that.

Immediately after the phone call, the defendant sent a text message to the UC. The defendant asked, "Feel better . . . after talking I mean." The UC responded that he did feel better. The UC texted that his girlfriend was still at the house with her child. The defendant wrote, "Too bad you can't get her to leave earlier LOL." The defendant and the UC then texted logistics of the meeting including time and location. The UC and the defendant also discussed what they would do to the child via text message. The defendant wrote, "Hope she likes me."

Law enforcement officers identified the defendant through the phone number provided by the defendant to the UC. The defendant was further identified through law enforcement and public databases as Chad Pyles, date of birth ▓▓▓▓▓▓▓▓.

On September 10, 2013, at approximately 9:00 p.m., after extensive text messaging about the meeting location, the defendant met the UC at the agreed upon location in Washington, D.C. The defendant and the UC made eye contact and the defendant identified himself to the UC as Chris – the name he had used during their conversations. Upon his arrest, defendant was in possession of an Ohio driver's license with the name Chad Pyles.

After his arrest, the defendant waived his rights and provided a statement to law enforcement. The defendant acknowledged corresponding with the UC, sending the child pornography and travelling from Virginia to the District of Columbia. The defendant insisted that he came to "watch" and see if the child was into it. The defendant also stated that if the child was not "into it" he had planned to call the police. When asked by law enforcement what he would do if the child was "into it," the defendant responded, "I could not tell you . . .What happens when you put a bank robber in a bank with the vault open . . .   I am not going to say anything to incriminate myself."

                                        DETECTIVE TIMOTHY PALCHAK
                                        METROPOLITAN POLICE DEPARTMENT

Sworn and subscribed to before me this _____ day of September, 2013.

                                        United States Magistrate Judge